The 4th District Appellate Court of the state of Illinois has now convened. The Honorable Peter C. Kavanaugh presiding. Thank you and good morning. We'll call the first case. It's 4-23-0719, 4-23-0720, Kim Stock Appellee versus Kenneth Pearce Appellant. Counsel, would you please, with the appellant first, state your full name for the record. Yes, Your Honor. Thomas J. Potter on behalf of Kenneth Max Pearce. Thank you and counsel for the appellee. Alexander Barnett on behalf of Appellee, Kim Stock and Scott Pearce. Thank you, Mr. Potter. You may proceed. Thank you. May it please the court and Mr. Barnett. Your Honor, we are here today in one chapter of a long history of litigation in this family matter, which is mostly the result of a family settlement agreement back in 2010. Since then, there has been a suit in 2010. It was dismissed. There's been a new suit in 2016. And I became involved as Mr. Pearce's fourth lawyer. Mr. Barnett is, I believe, the other side of the family's second lawyer. And this has just been grinding. And there are several other cases on file and these two new OP cases, in our view, were done for the sole purpose of protracting the litigation and running their father out of money and time. He's 92 years old. And tried with these two OP cases were a couple of rules to show cause in other cases. And because the burdens of proof and the order of proof was different, Mr. Barnett and I had agreed to simply call witnesses in no particular order, cross-examine, cross-examine till we were through, and then submit everything to the court. And that back and forth appears at page 31, 32 of the record. So that is why my witnesses were called first in the OP cases, which is a little bit unusual, but we're also trying rules to show cause at the same time. And those are, of course, part of these OP cases. The mission here, I think, is to save the farm from Max's assertion that the family settlement agreement was procured by fraud. And for the more side issues, the better. If you will look at the doctor's sheet, in one of the cases that I have produced, it's seven pages. And most of it is side issues. And again, the point is never to reach the merits of the case Now, focusing on these OP cases, the main problem, of course, is that Scott and him who were the petitioners failed to present themselves in the case of Scott's testimony. He didn't show up to resume cross-examination because he had business reasons for not showing up. Kim never testified at all. And she didn't show up because she had, quote, health issues, close quote. Well, it wasn't that one of them failed to appear and the other one appeared and tried to persevere. They both didn't appear. And that was nothing to the plan, especially because Scott did it for business reasons. And the judge, who was going to retire, did say, well, maybe we should have a continuous. And I said, look, my witnesses are lined up. These absences are voluntary. You're going to retire. I don't want a continuous because they're saying that they're not going to appear even if you do continue it. So my witnesses are all here. Let's proceed, which we did. And my witnesses pretty much refuted everything that was said by Scott in the testimony that he did yield. And then the judge said, okay, I'm going to enter the protection orders. I moved for a default. Judge denied it and said, well, I'm going to enter the protection order, the plenary. And, you know, this might have been one of the times where I should have filed a post-trial motion, but the judge is going to retire. And all that does is kick the can down the road. And that's part of the strategy of the petitioners here, is to run dead out of time and money. So I wanted to get this on appeal as best as fast as I could. The procedural due process argument is pretty clear. Cross-examination is one of the cornerstones of procedural due process. And any judgment entered without a procedural due process is void ad initio and at any time, whether on direct appeal or collateral. Now, the, the elements, let's see. The debates case, the judgment was entered without procedural due process and it was challenged because the statute therein provided that the parties could not cross-examine the representative of the child. The statute happened to be, happened to provide that, the court held that the statute was unconstitutional because it deprived the parties of procedural due process. We aren't challenging a statute here. We're just saying that under the circumstances of this trial, the judge was the one who deprived the parties, or Mr. Max, of procedural due process by entering judgment without, without full and fair cross-examination. And without even hearing one of the parties who still had to go through examination to see a first story match your brother's story. Of that, I mean, I think it's essential. On page five of my brief, it goes through the reasons that we need cross-examination. He may reveal possible biases, prejudices, ulterior motives because of the witness's testimony. It has a laundry list of reasons that cross-examination is important. And also, let me interrupt, Mr. Potter. Certainly we understand the importance of your client's right to procedural due process. We want to address the arguments with regard to forfeiture and waiver that opposing counsel is clearly going to argue here in a moment, in addition to procedural due process. The waiver argument, first of all, it can be disregarded by the court in the interest of fairness, which I think if there is a waiver, it should be disregarded in the interest of fairness in this matter. The waiver, and I know what, it's a, there was this, the Shepard case is what they relied on mostly. And Shepard versus Sanders, the issue was Shepard had a preliminary emergency order of protection answered against him. Then there was a hearing on the plenary order. There's no evidence, but he wasn't served. He was in jail at the time. He didn't appear. There was no evidence that he didn't know about the plenary hearing. The plenary order was answered. Then he had a hearing on contempt issues. On November 19th, he didn't say anything about he wanted a new trial or a trial on the plenary order of protection. And the court said, well, in the fact of this case, the problem was caused by his not telling the court on November 19th, that he wanted a new hearing on the plenary order of protection that transpired in October. Because the court then said, okay, we're gonna do them both together. And the evidence probably would have been the same anyway. So that was due to a problem that was fixable had the procedure due process argument been raised prior to the November 19th hearing. In our case, there was nothing fixable because the petitioners said they didn't show up in tandem. And they said pretty much they weren't gonna show up because why should he spend his time, it's his trial and he's got business reasons for not showing up. So it wasn't anything that Max did that caused the problem. And given that they weren't gonna show up anyway, well, I'll put it this way. There's nothing that Max could do to fix the problem. So they might wanna say, well, you could have consented to a continuance. Well, great, but the witnesses were all there and lined up. And if they'll fail to show up once, what's to say they won't fail to show up again and the judge is gonna retire. And all they wanna do is fix the case on their own. And then maybe we have to have another hearing with a new judge. It just didn't make sense at the time to consent to a hearing with these people with no indication that they would show up for a continued hearing. So I don't think it's fair to say that just by failing to say the words procedural due process that we have somehow waived our right to raise that issue. It's not changing the theory of the case either because in an OP case, all you have to do is show up. You don't have to file an answer. You don't have issues joined by the pleadings. You just show it. It's like an FED case. You just show up and then you have a trial. It's trial on general denial. And the respondent has no theory of the case. The respondent just has to point out that the petitioner hasn't proved his case. So under these circumstances, I don't think just by failing to use the words procedural due process at the trial court level. We all know what happened. We all know the implications of what happened. The trial judge should have known that without also using the words procedural due process. So I hardly think, especially since it's something that happened at trial, that it can be looked on as a changing of the theory of the case. It just isn't. It just isn't. Okay. But to give you an example of the kind of testimony we got from Scott, it's more I know, but from seven to nine, seven to eight in my brief, my main brief, when Scott was on the witness stand, this is what we got from him. He was evasive. The judge noted that he was evasive. Which I put in my poet brief at page four, I'm sorry. Well, I can't lay my hands on it. Mr. Potter, if I could interrupt you for just a second. Sure. If you're asking us to consider, to decide this case on procedural due process, does it really matter what the substance of the testimony was? It does. Well, it does not, but on the other hand, the judge decided the case based on an incomplete record. And that's your due process argument. Well, that's true. I think you're correct. It does only to the extent that if I asked the same question 50 times and then they didn't show up and I wanted to ask the same question the 51st time, then there's a problem. But this was a long drawn out saga with a lot of issues. And I think that makes it more likely or more appropriate for the judge to have, for instance, allowed the impeachment about the foundation. And I'm just saying that even given the lack of complete record, the judge didn't have a lot to go on. But I guess I'm not asking, well, I am asking the question reversed on that simply because the record is incomplete and there wasn't much there anyway. So I hope that answers your question. You did, thank you. The foundation, and it's important, it's also important because I raised the Everest Inference Rule in my brief. And I think if the judge is completely, it's completely appropriate if you file this suit and you don't show up, you are certainly under your own control. And I think the judge should have taken all those inferences against the petitions in this case. So on that basis, I think maybe the testimony matters. But I think, yeah, overall, this is just one more facet of the shot and shim fashion, I'll say, trying to save the firm. And now they can put their father in jail based on the next time they have some whim. So it is important in a procedural due process argument, of course, the severity of the outcome to the one deprived is important. And this certainly is because now, now the respondent faces a jail, whereas before he didn't. So, and I have no doubt that if this is allowed to stand, then the children will be conjuring up something to see if they can get their dad thrown in jail. So this is quite important. And I would ask that the old peace be set aside on the procedural due process grounds. Thank you. Okay, there seems to be no questions. Thank you, Mr. Barnett. Thank you, your honor. Let me please the court counsel. I think it's important to note that what Kenneth Max Pierce is requesting here should not be taken lightly. And he is requesting significant relief. Max Pierce is requesting this court to vacate plenary orders of protection that the circuit court entered after finding that Kenneth Max Pierce had intentionally approached his son, Scott Pierce and the small town Erie, Illinois post office with a pistol in order to at a minimum intimidate or harass him. The circuit court entered the plenary orders of protection at issue based upon that incident, which it described as the primary incident and largely based upon the unrefuted fact that Max Pierce lied to law enforcement about that particular incident. There is no amount of questioning that Kenneth Max Pierce could have conducted of Scott Pierce or Kim Stock to change the unrefuted fact that Max Pierce lied to law enforcement when he was asked about that incident. And so the court is enabled to make that determination without having heard cross-examination? Yes, your honor. And the reason being is that it was able to make that determination based upon hearing Max Pierce's own recount of events, Max Pierce's cross-examination and Max Pierce's lengthy cross-examination of his son, Scott Pierce, based upon the post office incident. There is nothing out there that Max Pierce has cited or pointed to that additional questioning of Scott Pierce or Kim Stock, which had any additional light on this post office incident. Indeed. Let's start with Scott Pierce. Remind me, what was it with his cross-examination? It was stopped short? It was momentarily on May 25th. In that afternoon, Max Pierce started the cross-examination of Scott Pierce. There was a recess in order to allow Max Pierce to find an exhibit, at which point Kim Stock and Max Pierce had an interaction outside the presence of judge and myself. When we returned, Kim Stock was having a panic attack, an ambulance was called based upon that interaction. Trial was then set to resume on June 13th, which it did. And on June 13th, Scott Pierce took the stand and Max Pierce resumed his cross-examination of Scott Pierce. During that day, he could have asked Scott Pierce any number of questions he wanted to about the post office incident or any other incident or underlying facts giving rise to the entry of the protective orders. Mr. Barnett, it's kind of a custom that we let the other counsel try his case in the manner he chooses, not in the manner that you think he should choose, correct? Absolutely, your honor. There was no objection on me on behalf of the line of questioning that Kenneth Max Pierce was asking Scott Pierce when he took the stand on June 13th. But what ultimately happens is he does not get to finish his cross-examination, correct? That is true. He did not get to finish his cross-examination of Scott Pierce but I also did not have the opportunity to rehabilitate or conduct a redirect examination of Scott Pierce based upon the post office incident. But you're not the guy appealing. So that really doesn't matter, does it? Well, I think that it does based upon the line of questioning that Kenneth Max Pierce was asking on June 13th with Scott Pierce on the stand. Kenneth Max Pierce asked for a continuance to conduct discovery directed at the E.J. Pierce Foundation. Well, I think the question was not that he wanted to conduct discovery. He wanted to find out about the failure to comply with some discovery requests, didn't he? Well, he wanted responses to written discovery that he had served two weeks prior. We objected on the basis that the discovery- My colleague, Justice Steigman, if he were here would have said, counsel, that's a yes or no question. Can you answer it yes or no? Yes, he wanted responses to discovery that- Okay. So then what happened after that? So after that, we made an objection saying that the discovery was not due yet, that it was irrelevant. The court, over our objection, granted a continuance in order to have the discovery produced. In the interim, the court set a hearing on anticipated objections to the discovery, which took place in July, and set the trial to resume on August 8th and August 10th. When we went to the motion to compel hearing after hearing arguments of counsel, the circuit court found that the discovery that Kenneth Max Pierce was requesting, and that he requested a continuance for in the middle of his cross-examination of Scott Pierce, was largely irrelevant to the OP matters, and refused to order the E. Jane Pierce Foundation to produce any additional documents in connection therewith. And that means- Okay, so then what happened with the OP hearing? At the OP hearing on the beginning of August 8th, I unfortunately arrived without Kim Stock or Scott Pierce present. The reason being- Kim Stock never appeared to testify on behalf of her petition. Would that be true? That is true, Your Honor. All right. Scott Pierce never continued his cross-examination, was never available for Mr. Potter to continue his cross-examination on his petition. Is that true? That is true on August 8th, Your Honor. Why is that not a violation of procedural due process? Because we've specifically requested and moved to continue on the basis that they were not present. Max Pierce made an intentional and strategic decision in order to not or to object to our request to continue. Was it not true that he had witnesses present, which he indicated to the court? And was it also not true that the representation had already been made that continuance or not, they weren't coming back? No. And to address both of those points, Your Honor, the Pierce children never represented that they would not return to the protective order proceeding. In making the oral motion to continue, I specifically stated that Kim Stock needs additional time to address her health concerns and that Scott Pierce did not want to be present without his sister Kim there and his business trip. And her health concerns were what? Based upon the panic attack that she had endured on May 23rd. Caused by what? Her interaction with her father during- Which was what? It was no matter whose account that it was as described by the parties on the record, admittedly a minimal and brief encounter, but given the ongoing relationships- Allegedly, Max stuck his tongue out at her, correct? Correct. And that's what threw her into a panic attack, so violent that she was crying inconsolably and ultimately had to be taken away by ambulance. Is that correct? That's correct, Your Honor. And that is in the record on there that was made by the parties and counsel and the judge here. Now, Max says that we represented that they would never return to the protective order proceeding. That's not true. There's no record support for that. The reason for making the motion was to allow them to be present. The Pierce children did not call any additional witnesses to support the entry of protective orders. That's why they requested the continuance so that they could be present. Max Pierce did have witnesses who were lined up to testify on August 8th. Max Pierce, however, never told the court, wait a second, I have witnesses here today. I want them to take the stand in the absence of Kim and Scott so that they're here. They've taken time off work. Let's question them in their absence. But I can't submit this protective order without finishing my cross-examination of Scott Pierce. I can't submit this protective order without having the opportunity to question Kim Scott. There was a workable solution based upon his witnesses being present. And if what we were dealing with here was truly a fundamental constitutional right, the deprivation of which Max Pierce is requesting the court to hold an entire five-day protective order trial for not, he would have been able to find a way to reschedule his witnesses or to work out a solution with the court. He didn't. He never raised the constitutional issue once before the court. Instead, Max Pierce elected to move for default. It was a strategic- Counsel, let me interrupt. Is it his obligation to raise constitutional, protective, procedural right issues? I mean, you know, a plenary hearing is a comprehensive and exhaustive hearing that encompasses all relevant issues and evidence pertaining to a particular case, similar to a trial. Sometimes they can take up to a month. Sometimes they can take a day. The bottom line is this is like a trial. And is it his responsibility to say, look, I object because I haven't yet cross-examined these people. It's got a right to, it's about finality. The hearing's not over. Absolutely, Your Honor. And you hit the nail on the head when you stopped Attorney Potter and asked him to address the waiver and forfeiture issues. The Sanders v. Shepard case that we cite in our brief establishes that waiver applies to constitutional issues and arguments on appeal. There's no inalienable right to raise or argue a constitutional issue for the first time on appeal. In Sanders, a protective order was entered while the respondent was incarcerated. After he received the protective order, he retained counsel. His counsel filed a motion to dismiss, arguing provisions in the Illinois Domestic Violence Act that allowed the entry of the protective order in his absence were facially unconstitutional. On appeal, the respondent argued that the provision was unconstitutional as applied, requesting a new hearing and renewed his argument that the provision was facially unconstitutional. The Sanders court held that he waived his constitutional as applied challenge because it was an after-the-fact consideration which the trial court could have corrected if it was timely raised. That is precisely what we're dealing with here. This is an after-the-thought. No, one has to do with the deficiency of allegations, claims, or pleadings. The other has to do with procedural due process. Those are two completely different things. I don't, respectfully, Matt, what we're dealing with, here you are, Sanders is important for the waiver argument. There- Yes, it's important for waiver, but it has to apply to the circumstances that we have in front of us. And it doesn't. It applies to a deficiency in a claim or a pleading or a statute being unconstitutional. It doesn't apply to procedural due process. Facial unconstitutionality and procedural due process are two distinctly different things. They just both happen to relate to constitutional rights. Well, respectfully, Kenneth F. Pierce has stated that he's not challenging the entry of the protective orders based upon the evidentiary conclusions that the court reached. Instead, he's arguing that procedural due process entitles him to vacate those, even though he never raised the argument below. And Sanders makes clear that this is an argument that he can waive. And this is particularly on point here where Max invited the error himself when he objected to the motion to continue. In Crossman v. Kurless, which we've cited in our brief, this court specifically held, a party cannot complain of error he induced the court to make. It may not now attack a procedure to which he agreed. Max made a strategic choice to conclude the trial on the petitions for protective order, knowing that Scott Pierce was not going to be present and knowing that he was not going to have an opportunity to question Kim Stock. When I made the oral motion to continue, I specifically stated and recognized that Scott Pierce and Kim Stock would have to rest on the evidence that they've submitted to date if the motion to continue is not granted. Not withstanding that, Max Pierce stated to the court that a continuances was unwarranted under these circumstances. Max hedged his bets. He thought he was going to get a favorable ruling based upon Scott not being present, based upon Kim never getting to take the stand to corroborate her brother's version of- Who represented to the court that it didn't matter whether there was a continuance, they were not going to appear? Nobody represented respectfully, your honor, that they were not going to appear. Instead, I've made a motion to continue stating that we need more time to address Kim's health concerns. And when I made the motion to continue, counsel for Max Pierce said that a continuance is unwarranted under these circumstances. And then the circuit court denied the motion to continue. And in doing so, specifically stated that his pending retirement had nothing to do with his decision. And this goes back to the oral ruling that he made. Again, he relied primarily upon Max Pierce's own concession that he had lied to law enforcement about the most important issue of the post office incident that gives rise to the entry of the protective orders. And the lie was whether he'd ever owned a gun, right? Precisely. Okay. Had nothing to do with the facts of the incident. It was just a statement that he said he'd never owned a gun and in fact he had. Respectfully, your honor, that's not entirely accurate. Instead, when he was being questioned about the post office incident in the video specifically. So Max Pierce goes to the Erie Police Department to report crimes that he believes his son, Scott Pierce had committed. And during this interview, chief of police, Brian Hawk says, oh, the post office incident. I wanna talk to you about that. And in the course of that dialogue and in that exchange of questioning, it is asked by Brian Hawk whether Max Pierce has ever owned a pistol. Max considers the question, lies to him, says no, at which point they then laugh and say, well, it would be hard to conceal a shotgun underneath the winter coat, which is what Max was wearing in June of 2022 when he confronted his son, Scott, at the post office. So the lie was told in connection with Max's version of events of what transpired and actually happened at the post office in June of 2022. I believe that here under the procedural due process too, given the amount of questioning that Kenneth Max Pierce was able to, of all the witnesses that he was able to question here, that there is no procedural due process violation. Procedural due process requires notice and an opportunity to be heard. And Kenneth Max Pierce certainly received both of those over the course of five days. We believe that the people be dealing on Illinois Supreme Court cases, the closest on-point authority that any of the parties have cited with respect to procedural due process. And there, the Illinois Supreme Court held that a criminal defendant does not have a constitutionally protected right to cross-examine a complaining witness in an interrelated civil no-contact protective order proceeding prior to the criminal trial. The analysis in the De Leon decision started with the Medina versus California framework, which is used exclusively in criminal proceedings. Under that framework, the court is asked to determine whether the procedure at issue offends deeply rooted or fundamental traditions. The De Leon court recognized that criminal defendants can be incarcerated based upon an indictment alone, and a civil no-contact protective order certainly infringes less liberty interest than being incarcerated. From there, the De Leon court moved on to consider the three factors of the Matthews v. Eldred balancing test, which is traditionally used in civil litigation. Under the Matthews test, the De Leon court held there was no procedural due process violation, or there is no procedural due process right to cross-examine a complaining witness in a protective order proceeding. The same application of the Matthews factors that the De Leon court used in the Illinois Supreme Court decision applies to this case. First, there is a significant governmental interest to prevent domestic violence. That's noted on our brief on page 23 and 24. The legislature specifically noted the importance of curtailing domestic violence when it enacted the Illinois Domestic Violence Act, and that is precisely the acting procedure that Scott Pierce and Tim Stock used to obtain the plenary orders of protection against their father. Under the second balancing test, just like the defendant in De Leon, Max does not have a significant interest in interacting with victims or going to their places of employment. In fact, that's even more true in this case. There is an agreed injunctive order entered between these parties that prevents Max already from interacting or communicating with Scott Pierce or through third parties, which would include his sister, Kim Stock. Therefore, the protective order that was entered in this case does not restrict Max Pierce's movement or interactions with his children any more than those agreed injunctive order already did. Instead, the protective orders at issue simply give rise to harsher consequences if Max continues to violate the agreed injunctive order. And three, the risk of erroneous deprivation. Respectfully, it's our position that the risk of erroneous deprivation in this case is small. Max cross-examined Scott at length about the post office. Max's briefing and arguments established that he wanted to cross-examine and question Kim primarily about allegations of historical family abuse and the E.J. Pierce Foundation, what the circuit court found were largely irrelevant to the protective order proceedings. In fact, the circuit court specifically described the E.J. Pierce Foundation as a, quote, minimal issue to the OP cases, which is on record 749. Max offers no policy or legal reason why the Supreme Court would reach a different conclusion in this case. And respectfully, the de Leon's analysis of the Matthew factors apply to this case and precludes a finding that there was a violation of procedural due process. This is an issue and analysis, however, that the court should never reach. Max waived his argument by failing to raise it below, and he forfeited it by specifically resisting the Pierce children's motion to continue. Accordingly, for those reasons, we would respectfully request that your honors deny Kenneth Max Pierce's appeal in its entirety, affirm the rulings of the circuit court, and unless there's any other questions, I would concede my two. Thank you, counsel. Mr. Potter, rebuttal. Thank you, your honor. The de Leon case specifically required to analyze the, or to analyze or compare the criminal procedure versus the civil procedure in an OP case. In the de Leon case, on the criminal side, the probable cause is found by the indictment and the standards and the burden of proof are completely different. And on page four of my reply brief, I set up the important paragraph there, and the de Leon court, that opinion has no application in this civil case. I did find the indication that the trial court didn't believe Scott Pierce's testimony. That's on page one of my reply brief in the introduction. But nonetheless, we got the OP order entered. It seems to me that the law that says a judgment entered without due process is void no matter when it's attacked, doesn't want to say, oh yeah, but you can waive that by not using the words procedural due process in the trial court. The salient fact is, was the judgment entered without due process, procedural due process? And if it was, it's void. That is our touchstone here. And I think that the waiver argument is not applicable and even if it is, justice would demand that it be overlooked because of the court's mission to achieve justice in cases like this. Speaking of the hearing case, I wanted to cross examine him about the incident at the post office, especially because they had two people filming it on cell phones. And one of them, which I cite to in my reply brief, I believe, one of them, he asks, John. And so I'm trying to get Scott to say, where on the video is there any indication that you're gone? And that's the back and forth that I put on my brief where he wouldn't answer the question. So here they had two people filming, one of them asked, you're gone? And then they can't tell, and we have this dog and pony show about this video of a gun in the courthouse and Scott can't tell the court where on the video there appears to be a gun. Well, to me, that's just a setup and that's just part of what's going on here. And I wanted to cross examine him about her understanding of what happened at the post office and ask her about what's the first indication from this video that Max might have had a gun and see if she was matched the testimony that I would have been given by Scott. I didn't get to do that. So I think under the circumstances here, Max just didn't get his fair day in court and I would ask that the judgements be vacated. Thank you. Thank you, counsel. Seeing no questions, we will take this matter under advisement and we now stand in recess.